LAMBERT v. SAUNDERS.

4-7017

170 S. W. 2d 375

Opinion delivered April 19, 1943.

*Tom F. Digby* and *U. A. Gentry*, for appellant.

*Floyd Terral,* for appellee.

GRIFFIN SMITH, C. J.   John Robinson was employed by W. A. Saunders as a truck driver.[1] Saunders appears to have been an independent contractor whose principal business was to make deliveries of Arkansas Foundry Company products. Robinson was acting for Saunders when the Chevrolet truck he was driving (to which a trailer was attached) ran into Joel Lambert's automobile.[2] From a verdict in favor of the defendant, Lambert has appealed. Errors in giving, in refusing, and in modifying instructions, are alleged.

.   .   .

Front street in Conway runs north and south. On the east side, near the center of a block, is the post office. Angle parking of automobiles is permitted.

Appellant,[3] upon arriving in Conway the morning of February 9, 1939, appropriately parked his car in front of the post office and entered the building.

Lester Hatfield, driving south—and, as he testified, on the right side of a sixty-foot street—intended to turn left, cut across the street, and park south of the post office entrance. He gave no indication of this intent, which was partially executed.

Robinson was back of Hatfield, traveling, as he says, eighteen or twenty miles an hour. He undertook to pass Hatfield. When the truck's front end was about even with a point corresponding with a third of the length of Hatfield's car, measuring from the rear, with approximately four feet of space separating the two, Hatfield,

---

[1] Both Robinson and Saunders reside in Little Rock.

[2] Resulting damage to Lambert's car was $221.07.

[3] Lambert's home was in Holly Grove, Monroe county.

according to Robinson's testimony, swerved "pretty sharply" to the left, creating an emergency. Instinctively the truck driver turned left. The left front fender of Hatfield's car was lightly struck. As Hatfield expressed it, his fender was dented by the front wheel of the trailer; "also the rear wheel hit the same spot." Hatfield insists he had gradually slowed and was not in motion when sideswiped. Robinson testified that if he had not turned to compensate the sharp turn of Hatfield's car, he would have struck near the front door. He thought the front bumper of Hatfield's car hit the right rear wheel of the truck. The truck then "slid into other cars"—damaging to some extent several parked in front of the post office, and coming to rest with considerable impact when it struck the Lambert Oldsmobile.

Robinson admitted that in attempting to pass the Hatfield car he was far to the left of what would be the street median line. In fact, he was on a north-south line within four feet ("it might have been five") of the parked automobiles in front of the post office. Robinson denied that skid marks testified to by other witnesses were made by his truck. This could not have occurred, according to Robinson, because he did not apply brakes until Hatfield's car was struck. Thereafter the truck traveled "about the width of two cars parked there."

Chief John J. Ball of the Conway police was a block north of the post office when the collision occurred. He testified that Robinson came from a narrow street into Front. Estimated speed of the truck was thirty-five or forty miles per hour. When Robinson passed Ball he was using the left side of the street. Ball heard the collision. Investigation disclosed that six cars and the truck had been damaged. Well-defined skid marks were visible on the paving, indicating that the truck, before striking the Hatfield car, was on the left side of the street. The left front wheel of Hatfield's car was about two feet to the left of the street center, and there was ample room between the Hatfield car and the parked automobiles for a truck to pass.

Hatfield testified measurement of tire marks on the paving revealed that Robinson applied his brakes suffi-

ciently to cause skidding sixty feet before his (Hatfield's) car was struck, and thereafter the truck went fifty or sixty feet before hitting other cars. This statement was corrected with the explanation that the truck proceeded fifty or sixty feet from the point of contact with Hatfield's car to the Lambert machine.

. . .

Appellant concedes that all questions properly submitted to the jury would be binding if the triers of facts had been correctly instructed. It is argued, however, that "practically every instruction given at the request of the defendant was erroneous and prejudicial."

Instructions numbered three and four, which are strikingly similar, told the jury that the act of appellee's servant in striking and damaging appellant's automobile did not create a presumption of negligence, but the burden was upon the plaintiff to prove the negligent conduct. Stated differently, the instructions, in effect, were that *res ipsa loquitur* did not apply. It is especially contended that "so-called" Instruction No. 8 is not, in fact, an instruction, but is in the nature of a thesis on the defendant's grounds of avoidance.[4]

Instructions nine and ten correctly declared the law to be that if one free of negligence should be confronted by an emergency, it is his duty "to take necessary action" to prevent injury to himself or other persons, or damage

[4] The Court said: "You are instructed that defendant defends . . . on the grounds that the damages . . . were caused by a sudden emergency confronting the defendant's driver, and that defendant's driver was not guilty of negligence. . . . Defendant's defense is that while his employe was driving a truck through the City of Conway in a careful manner, and while in the act of passing to the left of a passenger car going in the same direction and at a time when both were approximately in the center of the block, the driver of the passenger car suddenly, and without warning, undertook to turn his car to the left and completely across the street immediately in front of defendant's truck, and at a time and under such circumstances that defendant's driver had one of two alternatives: that is, to strike the car that was turning to the left, or suddenly swerve the truck to the left in order to avoid striking the car; that in order to avoid striking the automobile that was being turned left, defendant's driver, faced by that emergency, swerved the truck to the left, and in so doing, unavoidably struck the plaintiff's car; and defendant further defends on the ground that the driver of the truck was not guilty of any negligence in bringing about the emergency that was confronting him, or in the handling of his truck after the emergency arose."

to property; and this would be true although it might later appear some other course would have been better.

In view of the fact that the defendant's contentions regarding the emergency were presented in instructions not subject to the formal objections made when presented, and because Instruction No. 8 contains an inaccurate statement as to which there was specific objection, requiring reversal when the inaccuracy is considered in connection with the undue emphasis given appellant's defense, it becomes unnecessary to discuss Instructions three and four.

In the eighth instruction there is the statement that an element of defense was that while Robinson, without negligence of any kind, was in the act of passing to the left of Hatfield's car, Hatfield "suddenly and without warning undertook to turn his car to the left *and completely across the street* [5] immediately in front of defendant's truck."

Robinson's own testimony shows that Hatfield did not turn *completely* across the street. This would have been impossible if Robinson were where he says he was when the attempt to pass Hatfield was made—that is, within four or five feet of the cars parked on the east side of the street. Robinson consistently insisted that Hatfield was driving to the left of the street center; hence, there could not have been an intent to do something that, in the circumstances, was physically impossible. If the reply be that this is a strained construction, it must be remembered that the wording was appellee's choice and it appears in an admonition complained of as having unnecessarily and improperly stressed what appellee contends were facts justifying Robinson's actions.

We agree with appellant that if substance of Instruction No. 8 had a function to perform in guiding the jury, it should have been free of factual inaccuracy, or at least unambiguous.

The judgment is reversed, and the cause is remanded for a new trial.

ROBINS, J., did not participate in the consideration of this case.

---

[5] Italics supplied.